28    79
160s  247

# Peoria & Pekin Union Ry. Co.

## v.

# The United States Rolling Stock Co. et al.

*Carriers—Destruction of Leased Cars by Fire—Action against Carrier —Parties—Statute of Limitations.*

In an action by a rolling stock company against a railroad company engaged in the general business of switching cars, to recover the value of several leased cars which were destroyed in the same conflagration, said cars having been switched at different dates, it is *held:* That if the plaintiff has a cause of action, it has a separate one for each car; that the fact that the declaration was amended after the cause of action was barred as to one of the cars, so as to include such car and to make appellees parties plaintiff, did not have the effect to revive the claim as to said car; that the owner of the cars was a proper party to bring the suit; and that such owner was in no way bound by contracts existing between the defendant and its lessees.

[Opinion filed July 20, 1888.]

Appeal from the Circuit Court of Peoria County; the Hon. T. M. Shaw, Judge, presiding.

Suit in assumpsit was instituted at the October term, A. D.

1884, in an action on the case by the Chicago, Saint Louis and Western R. R. Co., for the use of the appellees, to recover the value of three of the four cars which form the basis of the present case.

At the February term, 1887, by leave of court before that time granted, an amended declaration was filed, in which the Chicago, Pekin and Southwestern R. R. Co. was made plaintiff, for the use of the appellees, declaring for the value of all four cars, and at the same term another amended declaration was filed by leave of court, in which the appellees, for whose use the case had been originally brought, were made plaintiffs.

A fair statement of the principal facts involved in the case as presented to the trial court, can be gathered from the stipulation submitted by both parties, and material part of the lease referred to in the fourth clause of the stipulation as "Exhibit 1." The stipulation is as follows, viz.:

"In order to expedite the trial of this cause, the attorneys for the respective parties thereto have this day agreed upon the following for submission to the court, viz.:

"1. That the plaintiffs were duly incorporated and were the owners of the cars, the value of which is sought to be recovered in this suit, but they were not interested in the contents, taken to the sugar refinery hereinafter mentioned.

"2. That the Chicago, Pekin and Southwestern Railway Company was a corporation having a railway from Chicago to Pekin in this State, but at the time of the destruction by fire of said cars, as hereinafter mentioned, and for some time prior thereto and thereafter, its property was in the hands of one S. B. Reed, receiver of said company, by order of the United States Court at Chicago, who was managing and operating the property of said company, and was also using the tracks of said defendant between the cities of Peoria and Pekin, and also its tracks at Peoria, under a lease hereinafter mentioned, and that said Reed remained in the management and operation of the property of said Chicago, Pekin and Southwestern Railway Company, and of the privileges under said lease, until on or about the 5th day of January A. D. 1883.

" 3. The defendant is, and has been, a railway corporation since the first day of October, 1880, with tracks running on both sides of the Illinois river between the cities of Peoria and Pekin, Illinois, and is also engaged in a large switching and terminal business in both said cities, having what are known as railroad yards for that purpose in Peoria, and that the Peoria Sugar Refinery was located alongside of two of its tracks in Peoria, which were used for switching cars to and from said refinery.

" 4. That said Reed, as receiver of the Chicago, Pekin and Southwestern Ry. Co., was a lessee of the defendant, the Peoria and Pekin Union Ry. Co., under the terms and conditions of a lease similar to the one herein filed, marked ' Exhibit 1,' and made a part of this stipulation.

" 5. That said receiver, under said lease or contract, with his own men and motive power, brought the cars (afterward destroyed by fire, viz., Nos. 4145, 3829, 3839, 3043, but then in his possession,) from the city of Pekin, Illinois, to the city of Peoria, upon the tracks of defendant, in September and October, 1881, and placed them on other tracks or switches of said defendant in the city of Peoria; that afterward while the cars were on the tracks or switches as left by said receiver, Ira W. Gantt, the agent of said receiver, acting under the terms of said lease or contract, directed the defendant to switch said cars to said sugar refinery for the purpose of being unloaded, car No. 3043 being ordered so switched on September 12, 1881, car No. 4145 on September 27, 1881, car No. 3829 on October 10, 1881, and car No. 3849 on October 20, 1881; that said defendant by reason of such direction, and as provided in said lease or contract, and acting under it, switched said cars to said sugar refinery and left them standing upon a track at said refinery owned by said defendant, but embraced in said lease or contract with said receiver; that about noon of ·October 27, 1881, said sugar refinery and said cars were destroyed by fire, which was not in any way caused by defendant, or through its fault or negligence; that in handling said cars the said receiver and his agents, and the said defendant, acted under, and because of said lease or contract.

" 6.    That David W. Rider, whose deposition is herewith to be read on trial, on behalf of defendant, was, at the time of said fire, the superintendent of the Peoria and Pekin Union Ry. Co.

" 7.    That the deposition of Ira W. Gantt, herewith filed, is to be read on the trial on behalf of plaintiff.

" 8.    That the defendant does not, by this stipulation, waive any of its pleas filed in this cause May 4, 1887.

" 9.    If the court finds that the defendant is liable to the plaintiffs for the loss of said four cars, then .it is further stipulated as a basis for their value, that the cars were worth as follows, viz.: No. 4145, $450; No. 3829, $485.98; No. 4839, $460; No. 3043, $475."

The clauses in the lease are as follows:

"And this indenture further witnesseth, that said party of the first part hath let, leased and demised, and by these presents doth let, lease and demise, unto the said party of the second, third, fourth and fifth parts respectively, their successors and assigns, all and singular its said main tracks, side tracks, switches, turnouts, connecting track, round-houses, freight houses, passenger depots and all its terminal facilities in the said cities of Peoria and Pekin, whether the said described premises are now owned or held by said first party or shall be hereafter acquired.

" To have and to hold, under the terms, provisions, stipulations, limitations and conditions, for the use and enjoyment thereof herein contained, unto the said parties of the second, third, fourth and fifth parts respectively, and their successors and assigns, severally and equally, as tenants in common, for and during the full term and period of fifty years from and after the —— day of ———— A. D. 1881, and renewable from time to time for like periods forever, on the same terms, provisions, stipulations, limitations and conditions, subject to the earlier determination of this lease as hereinafter provided, but not exclusively however, the said party of the first part hereby expressly reserving unto itself the full right and power to make contracts for the use and enjoyment of said demised premises by other railroad companies doing business at the said city of

Peoria or desiring to do so; the said lessees to take, use, occupy and enjoy said demised premises in the manner following and not otherwise, that is to say:

"*First.*—The said lessees shall severally have the right to the common use and enjoyment of all the main tracks, aforesaid, of the said cities of Pekin and Peoria, and the necessary side tracks for passing trains, in running their trains of every class over the same or any part thereof, with their own engines and employes, between Pekin and Peoria, and for the purpose of delivering and receiving their trains and cars to and from the party of the first part, and to and from the said union passenger depot.

"*Second.*—The said lessees shall severally have the right to use the said round-house or houses, together with the necessary approaches thereto, for the care and shelter of their engines, and to use said turn-tables for the purpose of turning their engines and cars.

"*Third.*—The said lessees shall severally have the right to the use of the said freight house or houses, and of the proper tracks connecting therewith, for the purpose of loading and unloading freight, and also the use of the standing room provided for the loading and unloading of cars from or to wagons and drays, the first party to furnish the necessary labor therefor.

"*Fourth.*—The said lessees shall severally have the right to the use of all the transfer tracks, side tracks, switches and turnouts and other terminal facilities of the first party at the said cities of Peoria and Pekin, for the transfer of loaded and empty freight and other cars by the said first party from and to all freight houses and warehouses, packing houses, stock yards, grain elevators, distilleries, mills and other industries, and to and from the tracks and warehouses of other railroads, with any of which any of the tracks of the first party shall at any time be connected, whether such tracks, or any of them, shall be owned or held or in some other wise controlled by said first party, and the said party of the first part, for the consideration aforesaid, doth hereby covenant and agree promptly and efficiently, and without discrimination or partiality in

favor of any company or the business thereof, to make such transfers of the loaded and empty freight and other cars of the said lessees respectively, the said first party hereby reserving unto itself the right to make transfer of all companies and persons desiring such service, without prejudice, however, to the business of the said several lessees, and said first party shall also make up and deliver on the main track all freight trains, and at the union passenger depot all passenger trains of the said lessees respectively.

"*Fifth.*—The said lessees shall severally have the right to the use of the said union passenger depot, when the same shall be constructed, and the appurtenances and approaches thereto, and to run their passenger trains into and out of the said depot. But until the completion of the said union passenger depot, the said lessees shall severally have the use of convenient and suitable accommodations for their passenger trains to be furnished by the said first party, and they shall at all times have the use of sufficient, convenient and suitable standing room for their passenger, baggage and mail cars at said city of Peoria, while not in use, on tracks to be provided and set apart by said first party.

"*Sixth.*—The said lessees shall severally have equal rights and accommodations in the use and enjoyment of all elevators, stock yards and other property and facilities at any time acquired or controlled by said party of the first part. The said party of the first part reserving, however, unto itself, its successors and assigns, the rents, tolls, incomes and payments hereinafter provided to be paid by the said several lessees respectively.

" And in consideration of the premises and of the covenants herein contained, to be performed by said party of the first part, the said lessees respectively do hereby covenant and agree, each for itself and its successors, and not for the other, that during the continuance of this contract it will pay unto the said party of the first part and its successors, as rental for the said demised premises, and for the use and enjoyment thereof as herein provided for, in the manner following, that is to say: .

"*First.*—The sum of $22,500 per annum, to be paid in equal monthly installments during the continuance of this contract, the installment of each month to become due and payable on the fifteenth day of the succeeding month, and to be paid at the place where the quarterly installments of interest on the first mortgage bonds of the party of the first part shall be payable, and when so paid the same shall be held for the payment of the next accruing interest on said bonds, and to be so paid out and not otherwise.

"*Second.*—The said lessees shall also severally pay to the treasurer of the said party of the first part, at the city of Peoria, on the fifteenth of the succeeding month, or within ten days after a statement thereof shall be furnished by the said first party, their just proportion of the expenses incurred or paid during the preceding month by the party of the first part, for the maintenance, renewal and keeping in thorough repair and working condition the said main track and sidings, passenger depot, approaches and facilities, freight and round-house or houses, and all other property which shall be used by the said lessees in common with the said party of the first part, and of such other proper joint expenses and charges as shall accrue from the common use of said main tracks, depots, freight and round-houses and other property used in common, such just proportion to be fixed and determined by the number of wheels used and run by the said parties respectively on said main tracks, the said moneys to be paid by the said lessees respectively, to bear the same proportion to the whole amount of said expenses so to be incurred which the number of wheels used and run by the lessees respectively on the said main tracks shall bear to the whole number of wheels used and run on the said main track for the preceding calendar month. Provided, however, that it is expressly understood that the expense of maintenance, renewal and repair of all tracks lying within the yards of the first party at and near Peoria and Pekin, shall be borne and defrayed by the said first party at its own cost.

"*Third.*—After the completion of said union passenger depot the said lessees shall also severally pay, at the time and in the manner last aforesaid, or within ten days after a statement

thereof shall be furnished by said first party, such reasonable sum for each of their passenger, mail and baggage cars entering or leaving said passenger depot during the preceding calendar month, as shall be fixed by said first party, being an uniform rate per car, to be charged to all companies which shall run their passenger trains to and from the said depot without discrimination, which shall include the charges for making up trains.

" *Fourth.*—The said lessees shall also severally pay, at the time and in the manner last aforesaid, or within ten days after a statement thereof shall be furnished by the party of the first part, all such reasonable charges as shall be made by the party of the first part for the preceding calendar month, for the transfer service hereinbefore required to be done to and from connecting railroads, being an uniform rate per car, which shall have been previously fixed by said party of the first part, to be charged to all companies for such services without discrimination, and which shall approximate the actual cost of such service as nearly as possible, which shall include the charges for making up trains.

" *Fifth.*—The said lessees shall also severally pay, at the time and in the manner last aforesaid, or within ten days after a statement thereof shall be furnished by the party of the first part, all such reasonable charges as shall be made by the party of the first party for preceding calendar month for handling and switching their loaded and empty cars to and from freight houses, warehouses, packing houses, stock yards, grain elevators, distilleries, mills and other industries at the cities of Pekin and Peoria, being an uniform rate per car, which shall have been previously fixed by the said party of the first part, to be charged to all companies and persons for such service without discrimination, which shall include the charges for making up trains."

It also appears from the evidence of Rider and Gantt that after the cars in question were delivered to the appellant to be switched to the sugar refinery, and after they were so switched and left on the track at said refinery, they were still under the control of appellants, waiting orders from the party deliver-

ing them, or some industry, to be reloaded, when they were to be returned to the parties delivering them.

To this cause of action the appellants filed a plea of the statute of limitations of five years, May 4, 1887.

Messrs. STEVENS, LEE & HORTON, for appellant.

It is assumed by appellees that the appellant was a common carrier of the cars that were burned up at the sugar refinery, and that its. liability, as such, is determined by the case of P. & P. U. Co. v. C., R. I. & P. Co., 109 Ill. 135. It is further assumed that Reed had a right of action against it as a carrier, and that this right extended to the appellees as the owners of the cars. There are but few cases in any way analogous to this one. It is not determined by the case above cited, and upon which the appellees will attempt to fix the liability in this one. It will be seen in that case that no relation of lessor and lessee existed.

That case was one of first impression in our court. Since its decision the U. S. Circuit Court for the Eastern District of Missouri, Judge Treat presiding, has announced a contrary principle in a similar case. M. P. R. R. Co. v. C. & A. R. R. Co., 23 Am. & Eng. R. R. Cases, 718.

It is identical with the case of the P. & P. U. Co. v. C., R. I. & P. Co., and announces, as we believe, a correct principle, although opposite to that of our Supreme Court; but inasmuch as the C., R. I. & P. Co. had no interest whatever, as lessee or otherwise, in the tracks and property of the P. & P. U. Co., we do not think that the principle laid down by our court, if a correct one, is at all applicable to the present case.

In St. P. & S. C. R. R. Co. v. M. & St. L. R. R. Co., 26 Minn. 243, there was an agreement between the plaintiff and defendant companies, between whose lines of road there was a rail connection at Merriam Junction, and the defendant received from plaintiff at the junction eight of its cars, loaded with wheat, for transportation and delivery to consignees at Minneapolis, a point on defendant's road. By the terms of said agreement the defendant was required to haul the cars over its road, having exclusive charge and control

thereof, make delivery of the wheat, and return the cars, either loaded or empty, to the plaintiff, at the junction, in as good condition as when received, ordinary wear and tear by use excepted. Both parties were to share the profits of the transportation of the wheat and other freight so carried, and plaintiff was to receive from defendant, in addition to its shares of such profits, a stipulated compensation for the use of its cars, and while being so used by the defendant, the cars were wholly destroyed by fire at Minneapolis, without any fault or negligence on its part, amounting to more than ordinary wear and tear.

The court held that the defendant was not liable to the plaintiff for such loss, either as a common carrier, bailee for hire or otherwise.

Mr. H. W. WELLS, for appellees.

Our statute, act 1873, Starr & C. Ill. Stat., p. 1961, was construed by the Supreme Court to recognize a railroad company a common carrier of railroad cars. P. & P. U. Ry. Co. v. C., R. I. & P. Ry. Co., 109 Ill. 136.

We insist that the case now presented is in all its essential features like the case of P. & P. U. v. C., R. I. & P. Ry. Co., 109 Ill. 135.

It was the same fire, October 27th, referred to in that case, that destroyed the cars sued for in this case. The only difference in facts being, that in that case the defendant was liable to return the empty cars to the plaintiff, and in this case it was bound to store them until called for.

The so-called lease was simply a contract by which defendant became a common carrier for the other parties to the lease, and undertook the carriage of all their cars, loaded or empty, upon a compensation mentioned, and to be ascertained under the contract.

There is no attempt to waive or evade liability as a common carrier anywhere in the contract. Nor is there any disguise of its position, as such carrier.

The defendant accepted these cars as a common carrier, and began to transport them, and we insist for appellees that such

responsibility continued; that it was legally liable as a common carrier until the transportation was completed. Nor can defendant excuse itself from the performance of its duty as carrier by producing this lease in evidence, to the receiver of a railroad which simply delivered these cars to defendant to be transported.

As was stated in the opinion, the case of the P. & P. U. Ry. v. C. R. I. & P. Ry., *supra*, was in that court a case of first impression. The principles governing the case, however, were well established and have never been questioned. Mallory v. The Tioga R. R. Co., 39 Barb. 191; Hannibal R. R. Co. v. Swift, 12 Wall. 272; Spears v. L. S. & M. S. R. R., 67 Barb. 518; N. J. R. R. Co. v. Pa. R. R. Co., 3 Dutch. 100; V. & M. R. R. Co. v. Fitchburg R. R., 14 Allen, 462.

The liability of a common carrier continues from the time the carrier accepts the goods until the contract of transportation is completed and the goods delivered in a warehouse.

In this case the carrier was to deliver the cars on its track to the sugar refinery, there to be unloaded, then was to store them in its yards. The liability as carrier continued until the cars were actually stored. Mohr v. C. & N. W. R. R., 40 Iowa, 579; Leavenworth, etc., v. Morris, 16 Kan. 333; C. & N. W. Ry. v. Bensley, 69 Ill. 630.

The stoppage of the cars to be unloaded was not a storage of the cars, but merely one of the stages of transportation.

It is one of the inflexible rules of law that a carrier can not become a warehouseman while the goods are in transit. McDonald v. Western R. R., 34 N. Y. 497; Oumut v. Henshaw, 35 Vt. 605.

These cars were in defendant's custody while at the sugar refinery, simply awaiting transportation. R. R. Co. v. Mfg. Co., 16 Wall. 318.

This action is brought in the name of the owner of the cars. That the owners were the proper parties has been held by our Supreme Court in Merchants Despatch v. Smith, 76 Ill. 542; G. W. R. R. v. McComas, 33 Ill. 185.

The case of I. C. Ry. v. Schwartz, 13 Ill. App. 490, is a leading case upon this question, and while the question there

turned upon the right of the consignee to sue under the contract, the reasoning of the court states the right in such cases as largely hinging upon ownership of the goods transported. See also Stone v. Wabash, etc., 9 Ill. App. 48.

*Per Curiam.* We are of the opinion that the plea of the statute of limitations should prevail as to car No. 3043. It will be seen that each one of the cars mentioned in the above agreement was delivered to the appellant to be switched at different dates, hence the appellee, if it has a cause of action, would have a separate one for each car.

In the first declaration filed in October, 1884, the then plaintiffs declared for the loss of but three cars. All the cars were destroyed by fire September 27, 1881. The amended declaration was filed in February, 1887, in which the charge for the loss of car No. 3043 was first counted on as claimed.

This it will be seen was more than five years after the cause of action accrued, and was barred by the statute of limitations. The fact that the declaration was afterward amended so as to make appellees parties plaintiff, could not have the effect to revive the claim as to such car already barred. To gain the claim for this car in the original declaration by way of amendment would be no different in point of law than to file a new count for it. It was entirely omitted from the declaration till after the bar had taken place. It can in no way be regarded as a recounting for the same cause of action. This point seems to be fully settled in I. C. R. R. Co. v. Cobb, Christy & Co., 64 Ill. 128.

In that case a new count was filed declaring on a cause of action for loss of oats, not embraced in the original declaration and after the lapse of the statute, and it was held to be within the statute. The plea was good as against so much of the count as was barred, and the fact that it set up a bar to all would not interfere to make it bad as to the portion barred.

We are of the opinion that the appellee was a proper party to bring the suit. Merchants Despatch v. Smith, 76 Ill. 542; G. W. R. R. Co. v. McComas, 33 Ill. 185. That as to a shipper of cars over appellant's road we must hold it to stand

in the relation of a common carrier, as was fully decided in P. & P. U. Ry. Co. v. C., R. I. & P. Ry. Co., 109 Ill. 136.

The appellee was the owner of the cars destroyed by fire, and was in no way bound by the contract between the railways, who were lessees of appellant, and the appellant, even if their contract relieved the appellant as to them, from the obligations of a common carrier, a point we do not now decide. The appellant was in the general business of switching cars for all railroads which would furnish it business. Whatever may have been decided in the United States District Court in Missouri, or in any other courts different, if different from the rule announced in the above cited cause reported in 109 Ill. 136 above, could have no binding effect in this court, as we are bound by the decisions of the Supreme Court of this State; so we will not stop to consider the cases cited by counsel for the appellant on that subject.

For the reason above given the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*